**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOANNE RUDOLPH, et al,               :
                                     :
          Plaintiffs,                :         CIVIL ACTION
                                     :
     vs.                             :         NO. 07-cv-01570
                                     :
CLIFTON HEIGHTS POLICE               :
DEPARTMENT, et al,                   :
                                     :
          Defendants.                :


**MEMORANDUM AND ORDER**


**Joyner, J.**                                    **July 7, 2008**


        Presently before the Court is Defendants' Motion for Summary
Judgment (Doc. No. 22) and Plaintiff's Response thereto (Doc. No.
26).  For the reasons set forth below, the Court GRANTS IN PART
and DENIES IN PART Defendants' Motion.


                            BACKGROUND

     On July 4, 2005, Plaintiffs Joanne and Jeffrey Rudolph
attended an Independence Day party at the home of their son,
Jeffrey Rudolph, Jr., in the Borough of Clifton Heights, Delaware
County.  This property was located near a public field where the
Borough holds an annual July Fourth celebration, which includes a
parade during the day and fireworks in the evening.  During the

                               1

fireworks, all Clifton Heights Borough Police Officers are on
duty, with some assigned to an ordinary shift and others assigned
to traffic detail.

At the conclusion of the fireworks show on July 4, 2005,
Clifton Heights Officers received complaints and 911 calls about
an unruly crowd at the intersection of Fairview Road and Walnut
Street, near the residence of Jeffrey Rudolph, Jr.  Officers
Christian Caputo and John Martin, who were directing traffic at a
nearby intersection, also received reports from passing
pedestrians about a disturbance at the intersection of Fairview
and Walnut.  They contacted Officer Thomas Gallo, who was on
bicycle patrol duty at the time, to go to Fairview and Walnut and
determine the status of the crowd there.

Officer Gallo rode to the scene, where he reportedly
observed a large group of people in the intersection, including
some who were jumping on cars and discharging fireworks in the
street.  Officer Gallo called over his radio for more Officers to
respond to the scene, and his call was broadcast by the Delaware
County Emergency Services to officers in neighboring
jurisdictions as an "officer assist" call.  Plaintiffs claim that
at this point, Officer Gallo began "indiscriminately" spraying
"innocent persons" on the street with pepper spray to disperse
the crowd.  Officer Gallo testified in his deposition, however,
that he first attempted to disperse the crowd with verbal
commands, but that someone set off a firework immediately in

2

front of him and soon after he heard a can hit inside a nearby truck which made "a loud popping noise."  At that point, Officer Gallo grabbed the pepper spray from his utility belt, and purportedly gave verbal warnings about the pepper spray before discharging it into the air over the crowd, using one- to three-second bursts.

Additional officers, including Defendants Chief Walter Senkow and Sergeant Stephen Brown, began arriving at the location soon after Officer Gallo discharged the pepper spray.  The arriving officers also ordered the crowd to leave the area.  In her deposition, Mrs. Rudolph testified that at this time, she saw the commotion caused by the pepper spray and began to search in the area for her infant grandson.

While attempting to disperse the crowd, Chief Senkow and Officer Gallo, along with Officer John Clancy, came across a member of the crowd, reported to be John Walker, who was refusing to disperse.  Officer Clancy saw Walker attempt to strike Chief Senkow and Officer Gallo intervene on his behalf.  The Officers attempted to arrest Walker, who resisted, and Officer Gallo sprayed Walker in the face with pepper spray to subdue him.  Chief Senkow, who was involved in the struggle, was also accidentally sprayed with pepper spray.  Sergeant Brown testified that while Chief Senkow and Officer Gallo were struggling with Walker, a female jumped on Senkow's back and the Officers were approached by Plaintiffs' son, Jeffrey Rudolph, Jr.  Once Walker

was completely subdued, Chief Senkow also ordered that Rudolph, Jr. be arrested.

While these arrests were taking place, several other officers, including Officer Martin, formed a barrier between the arresting officers and the rest of the crowd.  Officer Martin testified that at one point, an unidentified female tried three times to run past him and the other perimeter officers.  Officer Martin claims that he stopped her each time, and on the third attempt she fell to the ground.

Plaintiff Joanne Rudolph testified that she was pushed from behind, and then "slammed" to the ground, by a police officer. She further testified that after she was slammed to the ground a second time, the officer ultimately placed his foot on her back. As a result of being thrown to the ground, Mrs. Rudolph claims to have suffered a fractured wrist and other soft tissue injuries.

While she was being held to the ground, Mrs. Rudolph claims that she spotted and called out to Chief Senkow, who she knew because she taught religious education classes to his son.  Mrs. Rudolph testified that when she called out "Walt," he replied "you are getting what you deserve."  Chief Senkow disputes saying this, however, and Mrs. Rudolph testified that she did not think he knew who she was at the time.  Afterwards, Clifton Heights Police Officers asked Plaintiffs if an ambulance was required. Plaintiffs refused, and Mrs. Rudolph's sister took her to the hospital where her injuries were assessed.

4

*This Lawsuit*

On April 19, 2007, Plaintiffs filed their civil Complaint in this Court alleging violations of 42 U.S.C. § 1983. Specifically, Plaintiffs' Complaint asserts that the actions of Clifton Heights police officers during the events of July 4, 2005, "deprived [Mrs. Rudolph] of her liberty interest in her bodily integrity" in violation of Sections 1983, 1985, 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Plaintiffs also allege that the Borough and Chief Senkow maintained policies that led to this deprivation of Mrs. Rudolph's constitutional rights.  Finally, Plaintiffs assert that the constitutional injury was also caused by deficient supervision and training of subordinates by Chief Senkow and Sergeant Brown.  Mrs. Rudolph claims that as a result of these unlawful actions and inactions, she has suffered a loss of income and earning capacity and mental anguish and pain, and has incurred medical expenses for her treatment.  Mr. Rudolph has also filed a loss-of-consortium claim related to Mrs. Rudolph's injuries.

On November 28, 2007, Defendants Senkow, Brown, Gallo, and the Borough of Clifton Heights and the Clifton Heights Borough Police Department filed the instant Motion for Summary Judgment.

On May 5, 2008, we granted Plaintiffs' Motion to Amend their Complaint to add Officer John Martin, who is alleged to be the officer who struck Mrs. Rudolph, as a named Defendant.  Officer Martin is not a party to the Motion for Summary Judgment that we consider here.

STANDARD OF REVIEW

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).  Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden."  Id. (quoting Wetzel v.

6

<u>Tucker</u>, 139 F.3d 380, 383 n. 2 (3d Cir. 1998)).  In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  <u>See</u> <u>Bowers v. Nat'l Collegiate Athletic Ass'n</u>, 475 F.3d 524, 535 (3d Cir. 2007).  However, there must be more than a "mere scintilla" of evidence in support of the non-moving party's position to survive the summary judgment stage. <u>Anderson</u>, 477 U.S. at 252.


<u>DISCUSSION</u>

Plaintiffs' Complaint states that Defendants violated 42 U.S.C. §§ 1983 and 1985 by depriving Mrs. Rudolph of her constitutional rights.  Those claims are addressed with respect to each Defendant in turn.  The Complaint also uses language that appears to state a claim that some state laws were violated in the course of the events of July 4, 2005, such as assault and battery.  Defendants Gallo, Senkow, Brown, and the Borough of Clifton Heights and the Clifton Heights Police Department have moved for summary judgment on all claims, including any potential state law claims.

## I.  Section 1983

Section 1983 provides a remedy against "any person" who, under the color of state law, deprives another of his constitutional rights.  42 U.S.C. § 1983.  Plaintiffs assert that the following Defendants violated Mrs. Rudolph's constitutional rights while acting under the color of state law: (1) individual officers Thomas Gallo, Walter Senkow, and Stephen Brown;[1] and (2) the Borough of Clifton Heights and the Borough of Clifton Heights Police Department.  We will address Plaintiff's claims against each Defendant in turn.

### A.  Individual Officers

To establish their claim under § 1983 against the individual officer Defendants, Plaintiffs must set forth: (1) a deprivation of a federally protected right; and (2) commission of the deprivation by one acting under color of state law.  Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997).  Plaintiffs allege that one or more Clifton Heights Police Officers used excessive force in pushing her to the ground and stepping on her, in violation of

---

[1] Plaintiffs indicated in their response to Defendants' Motion that they consent to the dismissal of Officers John Chappelle, John Clancy, and Christian Caputo as named Defendants.  Accordingly, we will GRANT Defendants' Motion as to these Officers.  The final remaining named Defendant, Officer John Martin, is not a party to the Motion for Summary currently before us, and thus we will not address the claims being made against him at this time.

8

her Fourth Amendment right to be free from unreasonable searches and seizures.[2]  To show an officer used excessive force as an unreasonable seizure in violation of the Fourth Amendment, a § 1983 plaintiff must show that a "seizure" occurred and that it was unreasonable.  Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (citing Brower v. County of Inyo, 489 U.S. 593, 599 (1989)).

### 1.  Officer Thomas Gallo

Plaintiffs first claim that Officer Gallo reacted excessively and unreasonably to the "disorderly" crowd he encountered when he arrived on the scene of the 911 call, and that this set into action a chain of events that ultimately led to the use of excessive force by Officer Martin against Mrs. Rudolph.  Defendants do not challenge Plaintiffs' assertions that Officer Gallo's handling of the crowd - in particular his use of pepper spray, in which he allegedly was not trained - was

---

[2] Plaintiffs' Complaint also mentions the First, Fifth, and Fourteenth Amendments.  However, Plaintiffs do not address the First and Fifth Amendments in their response to Defendants' Motion, and no evidence has been produced to support any claims under those provisions.  Thus, we will not address them. Furthermore, we note that Plaintiffs have not asserted a violation of the Fourteenth Amendment on substantive due process grounds, and thus we assume that it is being invoked as working in tandem with the Fourth Amendment.  See Graham v. Connor, 490 U.S. 386, 395 (1989) (noting that where "the Fourth Amendment provides an explicit textual source of constitutional protection against [a type] of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analysis.").

unreasonable.  Rather, they assert that because Gallo did not actually make any contact with Plaintiffs (who were not hit by pepper spray), he cannot be liable for any constitutional violation.

The Third Circuit has not directly addressed the issue of proximate causation in § 1983 cases outside of the context of supervisory liability.  However, this Court has previously held that causation by an individual § 1983 defendant may be established in two ways: (1) with evidence of direct personal involvement in the alleged constitutional violation by the defendant; or (2) with evidence that the defendant set in motion a series of acts by others that the defendant knew or reasonably should have known would cause others to inflict the constitutional injury.  Williams v. Pa. State Police Bureau of Liquor Control, 144 F. Supp. 2d 382, 384 (E.D. Pa. 2001) (citing Arnold v. Int'l Bus. Machines Corp., 637 F.2d 1350 (9th Cir. 1981)).  We find the Ninth Circuit's reasoning in Arnold, 637 F.2d at 1355, as adopted by the Court in Williams, to be persuasive on this issue, and note in particular that the text of § 1983 a remedy against one who "subjects, or *causes to be subjected*" another to a constitutional deprivation.  Accordingly, we adopt the proximate causation analysis of Williams and reject

10

Defendants' suggestion that a § 1983 defendant can only be liable if he had personal involvement in the unconstitutional act.

In this case, there is no dispute that Officer Gallo was not directly involved in the physical force that was applied to Mrs. Rudolph.  However, Plaintiffs have produced evidence, mainly in the form of the report of expert James A. Williams, that Officer Gallo's response to the crowd was unreasonable and that it would foreseeably lead to the use of excessive force by another. Defendants have not disputed this report, and have not otherwise challenged Officer Gallo's role in the events that led to the alleged excessive force used against Mrs. Rudolph.  Thus, there is at least a dispute as to such issues as whether Officer Gallo "knew or reasonably should have known" that his response to the unruly crowd would eventually lead to the use of excessive force by a fellow Officer.  Accordingly, Defendants' Motion is DENIED with respect to Officer Gallo.

### 2.  Chief Walter Senkow

With respect to Defendant Chief Walter Senkow, Plaintiffs do not allege that he was directly, physically involved in pushing Mrs. Rudolph to the ground and holding her there.  Instead, they allege that Chief Senkow is liable for (1) his "acquiescence" in the use of excessive force by another officer, and (2) his

11

failure to properly train Clifton Heights Police Officers in crowd control and the use of pepper spray.  Both of these allegations invoke theories of supervisory liability under § 1983.[3]  See Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (treating failure-to-train claim against Police Chief as individual under a theory of supervisory liability).

There may be § 1983 liability for supervisors whose conduct amounts to "deliberate indifference" to the rights of persons with whom their subordinates come into contact.  Maslo v. Evans, 2003 WL 22594577, at *12 (3d Cir. Nov. 7, 2003) (citing Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999)).  The Third Circuit has assessed the § 1983 liability of supervisory officers slightly differently depending on whether it relates to an act of commission by an inferior, or an act of omission by the supervisor before any constitutional violation has actually occurred.  To establish supervisory liability based on the actual use of excessive force against Mrs. Rudolph during the events of July 4, 2005, Plaintiffs must show that Chief Senkow

---

[3] It is not clear whether Chief Senkow is being sued in his official capacity, his individual capacity, or both.  Plaintiffs' response brief, in addressing their failure-to-train claim, appears to treat that part of the suit as being against Chief Senkow in his official capacity, as it primarily discusses whether there was a "policy or custom" sufficient to convey municipal liability under § 1983.  Accordingly, to the extent that Plaintiffs are seeking to sue Chief Senkow in his official capacity for failure to train, that claim will be addressed in our discussion of the municipal liability of the Borough of Clifton Heights, below.

"participated in violating [her] rights, or that he directed others to violate them, or that he . . . had knowledge of and acquiesced in his subordinates' violations." <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1191 (3d Cir. 1995).  Furthermore, Plaintiffs must show a causation by establishing that Chief Senkow's inadequate supervision was the "moving force behind [his] subordinate's constitutional tort." <u>Maslow</u>, 2003 WL 22594577, at *12 (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1117-18 (3d Cir. 1989)).  Plaintiffs here argue that Chief Senkow "acquiesced" in another officer's use of excessive force because he failed to do anything when, *after* being knocked to the ground and stepped on, Mrs. Rudolph got his attention by calling out his name.  There is a dispute as to whether Chief Senkow actually heard and acknowledged Mrs. Rudolph, but even taking Plaintiffs' allegations as true, supervisory liability cannot be predicated on these facts.  Because the constitutional deprivation - that is, the excessive force - had already occurred when Chief Senkow was supposedly made aware of what was happening.  Indeed, Plaintiffs do not dispute that immediately after Mrs. Rudolph called out to Chief Senkow, the offending officer removed his foot from her back, and she got up and walked away.  Thus, there is no causal connection between (a) Chief Senkow's knowledge of the use of force and his failure to act, and (b) the use of

excessive force which led to Mrs. Rudolph's injuries.

Accordingly, Chief Senkow cannot be liable as a supervisor under

this theory.[4]

Plaintiffs also allege that Chief Senkow failed to properly

train his subordinate officers in crowd control and the use of

pepper spray, and failed to properly investigate or discipline

certain officers involved in a prior lawsuit predicated on an

excessive force claim.  Where it is alleged that a supervisor

failed to act where he should have done so, to establish

liability a § 1983 plaintiff must:

> (1) identify the specific supervisory practice or
> procedure that the supervisor failed to employ, and
> show that (2) the existing custom and practice without
> the identified, absent custom or procedure created an
> unreasonable risk of the ultimate injury, (3) the
> supervisor was aware that this unreasonable risk
> existed, (4) the supervisor was indifferent to the
> risk; and (5) the underling's violation resulted from
> the supervisor's failure to employ that supervisory
> practice or procedure."

Brown, 269 F.3d at 216 (citing Sample, 885 F.2d at 1118).  The

Third Circuit has explained that "it is not enough for a

plaintiff to argue that the constitutionally cognizable injury

would not have occurred if the superior had done more than he or

_____

[4] For the same reason, Chief Senkow cannot be liable under Plaintiff's
alternative "failure to intervene" theory.  Liability will lie under that
theory only if the officer knew about the ongoing wrong and had a "realistic
and reasonable opportunity to intervene."  Smith v. Mensinger, 293 F.3d 641,
651 (3d Cir. 2002).  Chief Senkow did not have such an opportunity in this
case.

14

she did." Id. Rather, the plaintiff must identify specific omissions evidencing deliberate indifference and persuade the court that there is a "relationship between the identified deficiency and the ultimate injury." Id.

To satisfy this standard, Plaintiffs simply argue that Chief Senkow "should have" ordered Department-specific training on crowd control and the use of pepper spray. They support this argument with selected deposition testimony by Plaintiffs and Chief Senkow and a conclusory statement by their expert, Dr. Williams, that Chief Senkow failed to "carry out standard and accepted responsibilities" by failing to train officers in crowd control. This evidence is not sufficient to meet the Third Circuit's standard for supervisory liability.

As an initial matter, Chief Senkow actually testified that at least four of the officers on the scene on July 4, 2005, actually *did* receive riot control training from Delaware County and were members of the Delaware County Emergency Response Team. He then explained that the Department policy manual, which all officers possessed, advised Clifton Heights police officers that the Emergency Response Team was available for help with crowd control. Plaintiffs have not even offered an explanation as to how this level of training and these policies presented an "unreasonable risk" without the addition of training in pepper

15

spray and crowd control training for the remaining Clifton
Heights officers.  There is also no evidence tending to indicate
that Chief Senkow was aware of this risk, or that he was
indifferent to it.  Accordingly, Plaintiffs' claim of supervisory
liability based on Chief Senkow's failure to train cannot survive
summary judgment.

Similarly, Chief Senkow's alleged failure to investigate,
and hand out discipline for, a single previous informal complaint
of excessive force against Officer Martin also fails the Third
Circuit test.  Again, there is no evidence as to how or why that
incident should have been handled differently, and in fact
Plaintiffs seem to only press this issue with respect to
municipal liability, as their arguments revolve around municipal
policy.  Accordingly, we will consider this issue in our
consideration of the Borough's municipal liability.  But as to
the suit against Chief Senkow in his individual capacity, this
claim must be dismissed.


### 3.  Sergeant Stephen Brown

For the same reasons that the claims of supervisory
liability against Chief Senkow cannot survive summary judgment,
the identical "failure to train" claim must be dismissed with
respect to Sergeant Brown.  Again, there is no evidence that

16

Sergeant Brown knew of an unreasonable risk created by failing to train fellow officers in crowd control or by failing to train Officer Gallo in the use of pepper spray.  Furthermore, on a more basic level, there is no evidence whatsoever that Sergeant Brown had the authority to order or conduct such training, and in fact such training does not seem to us to fall under the areas for which he claimed to be responsible.[5]  Accordingly, Plaintiffs also cannot establish § 1983 causation with respect to Sergeant Brown.[6]  For all of these reasons, the claims against Sergeant Brown must be dismissed.


**B.  Borough of Clifton Heights**

Plaintiffs have also brought suit against the Borough of Clifton Heights and the Clifton Heights Borough Police

---

[5] Specifically, Sergeant Brown testified that Chief Senkow "used him" to "familiarize the officers with the streets, the handling of the service calls in Clifton Heights, generating reports in the computer system, familiariz[e the officers] with  the rules and regulations of the police department, [and] training them on court, testifying and stuff like that."  P. Resp. Ex. B, p. 30.  None of these enumerated areas seem to include the training of officers in their specific conduct and interaction with the public, such as crowd control and use of pepper spray.

[6] Similarly, Plaintiffs cannot establish causation with respect to their vague "failure to investigate" claim.  There is no evidence whatsoever that Sergeant Brown could order or conduct an investigation into incidents like the one involving Mrs. Rudolph.  More importantly, though, the required causation element cannot be met where there is an alleged failure to investigate, *after* it has already taken place, the very incident in which the plaintiff's alleged injury occurred.  Mrs. Rudolph has not claimed that she sustained further injury *after* Sergeant Brown failed to investigate the events of July 4, 2005. Thus, there is simply no causal relationship between the alleged failure to investigate and Plaintiffs' constitutional injury.

Department.  As an initial matter, the Clifton Heights Police Department is not a separate legal entity from the Borough of Clifton Heights, and will be dismissed.  See Open Inns. Ltd. v. Chester County Sheriff's Dep't, 24 F. Supp. 2d 410, 417 (E.D. Pa. 1998).  We will treat all claims against the Police Department as claims against the Borough itself.  Plaintiffs allege that the Borough of Clifton Heights is liable under § 1983 for constitutional violations by individual officers because:  (1) it created a policy of arming officers with pepper spray but did not properly train officers in its use; (2) it failed to properly investigate a previous complaint of excessive force against Officers Brown and Martin and did not subsequently mandate further training for them; and (3) it had a policy of permitting officers to use police department computers to maintain internet sites on which "violent and offensive postings" could be made, which in turn fostered an "attitude of aggressive and violent actions towards members of the public."

Under Monell v. Department of Social Service of New York, 436 U.S. 658 (1978), and its progeny, a municipality can only be liable under § 1983 if it actually caused the complained-of violation.  Therefore, a municipality such as the City of Philadelphia may be liable under § 1983 only if it had a policy or well-settled custom which caused a deprivation of

18

constitutional rights.  Monell, 436 U.S. at 694.  As the Third
Circuit has made clear, "absent the conscious decision or
deliberate indifference of some natural person, a municipality,
as an abstract entity, cannot be deemed in violation by virtue of
a policy, a custom, or a failure to train."  Simmons v. City of
Phila., 947 F.2d 1042, 1063 (3d Cir. 1991).  Thus, a plaintiff
claiming a municipal violation of § 1983 "must both identify
officials with ultimate policymaking authority in the area in
question and adduce scienter-like evidence . . . with respect to
them."  Id. at 1062.  Furthermore, a plaintiff seeking to
establish municipal liability must show that the policy was the
"moving force" behind the constitutional injury; that is, he must
"show a causal link between the execution of the policy and the
injury suffered."  Losch v. Borough of Parkesburg, 736 F.2d 903,
910 (3d Cir. 1984).

　　We begin our analysis of municipal liability with
Plaintiffs' most outlandish claim - that the Borough had a
"policy or custom" of fostering aggression and violence in its
officers by allowing them to use police computers to maintain
personal internet sites.  The only evidence Plaintiffs have to
support this tenuous allegation is a printout of Officer Gallo's
MySpace page.  Among the many, many reasons this is insufficient
evidence for this claim to survive summary judgment, we note

19

simply that there is no evidence whatsoever that Officer Gallo even used police computers (as opposed to a home computer) to maintain his MySpace page.  Because there is far from sufficient evidence to sustain this claim of an unlawful "computer policy," it is dismissed.

Moving to Plaintiffs' "failure to train" and "failure to investigate" claims, we also find there is insufficient evidence to sustain these claims past the summary judgment stage.  In <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989), the Supreme Court explained that for inadequate training to provide the basis for municipal liability, there must be some proof of "deliberate indifference [by the municipal government] to the rights of persons with whom the police come into contact."  In other words, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality - a 'policy' as defined by our prior cases - can a city be liable" under § 1983.  <u>Id.</u> at 389.  This Court has recognized that under <u>City of Canton</u>, concluding that a failure to train is the product of deliberate indifference would be justified in at least two circumstances: "(1) a constitutional violation was a foreseeable consequence of, and very likely to occur as a result from, the failure to train adequately, i.e. there was an obvious need for more or different training . . . and (2) the municipality *repeatedly* received

similar complaints of constitutional violations by its officers and still failed to act." Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 862 (E.D. Pa. 2000). Applying the City of Canton standard, the Third Circuit has held:

> [A] failure to train, discipline or control can only form the basis for Section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or a knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's action or inaction could be found to have communicated a message of approval to the offending subordinate."

Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

As with their allegations against Chief Senkow, Plaintiffs's failure-to-train claim is based almost exclusively on evidence of a single prior complaint against Officer Martin and Sergeant Brown for excessive force. As this Court has found in the past, however, "one prior incident fails to fulfill the *City of Canton* requirement of repeated similar complaints or the *Montgomery* requirement of a pattern. Russoli, 126 F. Supp. 2d at 865. Furthermore, Clifton Heights police officers received Pennsylvania Act 120 certification and yearly training updates, as well as Act 180 yearly updates and extensive policy manuals containing procedures about use of force and deferring to the Delaware County crowd control team. In the face of this, Plaintiffs have submitted no evidence that would allow a

factfinder to conclude that a constitutional violation was a likely and obvious result of failing to provide specialized department-wide training in crowd control and the use of pepper spray.  Finally, Plaintiffs have also produced no other evidence that the Borough had knowledge of a "prior pattern of similar incidents," or that a failure to provide further training after a single complaint "communicated a message of approval to the offending subordinate[s]."  Accordingly, as there is insufficient evidence upon which a juror could conclude the municipality was deliberately indifferent to the rights of those with whom the police may come into contact, Plaintiffs' claims against the Borough of Clifton Heights are dismissed.[7]

## II.  Section 1985

Plaintiffs' Complaint also alleges that Defendants' actions violated 42 U.S.C. § 1985.  Sections 1985(1) and 1985(2) are

---

[7]  In reaching such a conclusion, we also briefly note Plaintiffs' argument that the Borough's "custom" of hosting an annual fireworks display also led to the constitutional violation and thus provided grounds for municipal liability.  In implicitly rejecting such arguments as this one in City of Canton, the Supreme Court noted "if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any . . . harm inflicted by a municipal official."  489 U.S. at 390 n. 9.  Hosting annual fireworks has no more of a causal connection to an eventual use of excessive force by a police officer than does the maintenance of a police force, particularly when there is no evidence whatsoever that there were any incidents of misconduct during past years' July 4th fireworks displays.  As the Supreme Court explained, Monell requires a greater causal connection than this, id., and thus we must reject this argument as well.

plainly inapplicable, as they deal with conspiracies to prevent United States officers from performing their duties and to deter witnesses from testifying in court.  42 U.S.C. §§ 1985(1), 1985(2).  Section 1985(3), however, provides a cause of action where "two or more persons" conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  To state a claim under § 1985(3), a plaintiff must show: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  <u>Lake</u>, 112 F.3d at 685 (citing <u>United Brotherhood of Carpenters and Joiners of Am., Local 610 v.</u> <u>Scott</u>, 463 U.S. 825, 828-29 (1983)).  Plaintiffs have not responded to Defendants' arguments regarding their Section 1985 claim, and have proffered no evidence whatsoever tending to show a conspiracy to deprive Plaintiffs of their constitutional rights.  Accordingly, Defendants' Motion is GRANTED with respect to Plaintiffs' claims under 42 U.S.C. § 1985.

## III.  State Law Claims

The only statutes expressly referenced in Plaintiffs'
Complaint are 42 U.S.C. §§ 1983, 1985, and 1988, but in paragraph
27, Plaintiffs state that Mrs. Rudolph was "viciously attacked,
assaulted and battered [which caused her] to become the victim of
false arrest, terroristic threats and a malicious abuse of
process."  Defendants' Motion for Summary Judgment seeks to have
dismissed any potential state claims being alleged as a result of
this language, particularly under the state law provisions for
assault and battery, see Darlrymple v. Brown, 701 A.2d 164, 170
(Pa. 1997), abuse of process, see Harris v. Brill, 844 A.2d 567,
572 (Pa. Super. 2004) and "terroristic threats," 18 Pa. Cons.
Stat. § 2706.  Plaintiffs have only responded to Defendants'
arguments regarding their assault and battery claim, and as there
is no evidence to support other potential state law claims, those
claims are dismissed.

"The Pennsylvania Supreme Court has defined battery as 'a
harmful or offensive contact,' and assault as 'an act intended to
put another person in reasonable apprehension of an immediate
battery, and which succeeds in causing an apprehension of
battery.'" Giannone v. Ayne Inst., 290 F. Supp. 2d 553, 568 (E.D.
Pa. 2003) (citing Dalrymple, 701 A.2d at 170 and Cucinotti v.
Ortmann, 159 A.2d 216, 217 (Pa. 1960)).  A police officer can be

24

held liable for assault and battery "when the [factfinder] determines that the force used in making an arrest is unnecessary or excessive." Glass v. City of Phila., 455 F. Supp. 2d 302, 365 (E.D. Pa. 2006) (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)).  Plaintiffs argue that any Defendants who are liable under § 1983 are, *a priori*, also liable for assault and battery under Pennsylvania state law.  As an initial matter, we disagree with Plaintiffs' apparent reasoning that § 1983 is automatically coextensive with assault and battery, particularly with respect to Chief Senkow and the Borough, for whom the legal standards of liability are markedly different than the ones for assault and battery.  In other words, though some claims of assault and battery may be based on facts that will successfully ground a claimed § 1983 violation (such as excessive force), not all violations of § 1983 will be based on allegations of a plaintiff being assaulted or battered.  Furthermore, the Borough of Clifton Heights is clearly immune from suit for this tort under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8541 ("[N]o local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.").

As for the individual Defendant Officers, Plaintiffs do not allege at this stage that they had any personal involvement in the purported excessive force used on Mrs. Rudolph.  There is also no evidence to support any legal claim based on physical contact or the threat of physical contact by Officers Gallo, Senkow, and Brown.  In fact, all of these Officers testified in their depositions that they made no contact with any females during the events in question, and those statements have not been disputed by Plaintiffs.  Accordingly, because there is no evidence upon which a reasonable juror could find in Plaintiffs favor on state law claims of assault and battery, those state law claims are dismissed as to Officers Gallo, Senkow, and Brown, and as to the Borough of Clifton Heights.

## IV.  Conclusion

Because there is a material dispute as to whether he "set in motion a series of acts by others that [he] knew or reasonably should have known would cause others to inflict the constitutional injury," Williams, 144 F. Supp. 2d at 384, Defendants' Motion for Summary Judgment with respect to Officer Gallo must be denied.[8]  However, Defendants' Motion is granted

---

[8]  We also take this opportunity to reiterate that because he was not a party to Defendants' Motion for Summary Judgment, we make no ruling as to Officer John Martin, who is the alleged principal actor and was only recently

with respect to Chief Senkow and Sergeant Brown, because there is insufficient evidence at the summary judgment stage to establish deliberate indifference towards the rights of others on the part of these officers.  Finally, as there is insufficient evidence to support an inference of deliberate indifference on the part of municipal policymakers, permitting the claims against the Borough to go forward would be "permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*."  <u>City of Canton</u>, 489 U.S. at 400 (O'Connor, J., concurring).  Accordingly, Defendants' Motion must also be granted with respect to the Borough of Clifton Heights and the Clifton Heights Borough Police Department.

An order follows.

---

added as a named Defendant.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOANNE RUDOLPH, et al,          :
                                :
          Plaintiffs,           :          CIVIL ACTION
                                :
     vs.                        :          NO. 07-CV-01570
                                :
CLIFTON HEIGHTS POLICE          :
DEPARTMENT, et al,              :
                                :
          Defendants.           :


ORDER

AND NOW, this 7th day of July, 2008, upon consideration of Defendants' Motion for Summary Judgment (Doc. No. 22), and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED IN PART AND DENIED IN PART, as follows:

1.  Defendants' Motion as to Defendant Thomas Gallo is DENIED.


2.  Defendants' Motion as to Chief Walter Senkow, Sergeant Stephen Brown, the Clifton Heights Police Department, and the Borough of Clifton Heights is GRANTED.  Judgment as a matter of law is ENTERED in favor of these Defendants and all claims by Plaintiffs against these four Defendants are DISMISSED.

3.  Defendants' uncontested Motion as to Officers John Chappelle, John Clancy, and Christian Caputo is GRANTED. Judgment as a matter of law is ENTERED in favor of these Defendants and all claims by Plaintiffs against these three Defendants are DISMISSED.

BY THE COURT:


s/J. Curtis Joyner
J. CURTIS JOYNER, J.